Duncan *v.* Baxter.

5-260                                   264 S. W. 2d 395

Opinion delivered January 25, 1954.

Rehearing denied March 1, 1954.

*John F. Gibson,* for appellant.

*Clifton Bond* and *DuVal L. Purkins,* for appellee.

Robinson, J.   This is a case wherein a landlord obtained from the government a loan on cotton produced by a tenant, the money thus obtained being divided properly with the tenant.   But later, upon the sale of the cotton, the landlord was paid an additional sum which he did not divide with the tenant.   The tenant filed this suit alleging that he is entitled to ¾ of the additional sum received by the landlord; the landlord contends that he

became the owner of the tenant's interest in the cotton upon a final settlement of the parties in the farming operation. Over the objection and exceptions of appellant, the cause was transferred to equity and there was a decree in favor of the landlord. The tenant appeals. We only reach the issue of whether equity has jurisdiction of the cause.

The appellant, Paul Duncan, was the plaintiff in the Circuit Court and alleges in his complaint that in the fall of 1947 he and the appellee, John Baxter, entered into an agreement whereby Duncan rented from Baxter farm lands, and as rent Baxter was to receive $\frac{1}{4}$ of all cotton produced; that during the crop year of 1948 477 bales of cotton were produced, which by agreement of the parties were placed under loan with the Production & Marketing Administration of the Department of Agriculture of the U. S. government. At that time the money paid by the government was properly accounted for. The complaint further alleges it was agreed between the parties that if the government paid any additional sum upon the sale of the cotton, Duncan was to receive $\frac{3}{4}$ of such amount and Baxter $\frac{1}{4}$; that in 1951 the government sold the cotton and it brought in excess of the original loan, plus expenses, $14,310 which was paid by the government to Baxter; that Duncan was entitled to $\frac{3}{4}$ of that sum which Baxter has failed and refused to pay to him; and prayed judgment against Baxter for $10,732.50.

Baxter filed a motion to require the plaintiff to make the complaint more definite and certain. The court granted the motion and required plaintiff to name in the complaint his sharecroppers that might have an interest in the proceeds of the cotton. These sharecroppers of Duncan's were his employees. *Hardeman* v. *Arthurs,* 144 Ark. 289, 222 S. W. 20. The court erred in requiring the plaintiff to name them in his complaint, as it only tended to confuse and becloud the real issue. It was no concern of Baxter as to whether they were ever paid by Duncan as Baxter was in no way morally or legally obligated to look after the interests of Duncan's employees any more so than it was Baxter's duty or obligation to

look after any other creditor of Duncan, and they are not parties to this litigation.

Next, Baxter filed an answer and motion to transfer the cause to equity which was done over the objection and exception of Duncan. Later, after the case had been transferred to the Chancery Court, Baxter filed an amended and substituted answer and motion to transfer to equity. Appellant filed a motion to transfer the cause back to Circuit Court which was overruled over the objection of appellant.

The answer alleges that in March, 1950, the relationship of landlord and tenant between the parties was terminated; that at that time Duncan was indebted to the Bank of Dermott in an unnamed amount and was indebted to Baxter in the amount of $12,865.62; that the bank had a mortgage on Duncan's personal property to secure its indebtedness; that Duncan delivered to Baxter the personal property; that the value of the personal property was not sufficient to offset Duncan's debts to both the bank and Baxter; and that Duncan had released all of his interest in the cotton to Baxter in addition to turning over his equipment as aforesaid; and that this constituted a final settlement between the parties. In addition several principles of equity are alleged as applying to the case; estoppel, necessity of an accounting, the existence of a trust, request for the reformation of a contract, a lien, equitable conversion, and no adequate remedy at law. However, no facts are pleaded which support any of these principles of equity. In fact the answer itself shows that none of these doctrines is applicable. The mere allegation of an equitable principle is a conclusion, and when no facts are alleged to support such principle the allegation is not sufficient to give equity jurisdiction. In *Cosby* v. *Hurst,* 149 Ark. 11, 231 S. W. 194, Chief Justice McCulloch, speaking for the court, said: ''Nothing is added to the force of the complaint by the formal statement that appellee had no adequate remedy at law. That was a mere conclusion, and according to the facts alleged there was no reason why a gar-

nishment in an action at law would not have afforded an adequate remedy.''

As to the allegation of estoppel, appellee says appellant is estopped from claiming a part of the money contended for because his interest in the cotton was transferred to Baxter at the time of the final settlement. If Duncan transferred his interest in the cotton to Baxter as alleged, that in itself is a complete defense for Baxter and the principle of estoppel does not enter the picture at all.

As to an accounting, it is claimed that one is necessary to determine the amount Baxter received from the government on the Duncan cotton, and yet the answer specifically alleges that both parties have a record of each bale of cotton grown and produced in 1948 by Duncan or his sharecroppers, and the bale numbers, compress weights, and loan price received; and it does not appear that any accounting would be necessary to determine the final amount paid by the government.

The answer alleges that in the event the court should find that it was not agreed at the time of the final settlement that Duncan's interest in the cotton was transferred to Baxter, the court should now reform the agreement in that respect. Of course, if there was no agreement between the parties that Duncan's interest was transferred to Baxter, then the court has nothing to reform. The court cannot make a contract for parties that the parties themselves do not agree to, either expressly or by implication.

As to a lien, Baxter needs no lien to effect the collection of his interest; he has the whole. He is either liable to Duncan for $\frac{3}{4}$ of it or he is not so liable. There is no contention that he is not entitled to keep the $\frac{1}{4}$.

The answer also alleges equitable conversion, but there are no facts alleged to support a conversion.

It is also alleged that there is no adequate remedy at law, but there is such a remedy as shown by the pleadings. In fact, this is a simple question to be decided by

a jury as to whether at the time of the final settlement between the parties it was agreed that Duncan released his interest in the cotton to Baxter. If as a part of the final settlement it was agreed that Baxter should own all interest in the cotton, that is the end of the matter. On the other hand, if Duncan's interest in the cotton was not released in the final settlement, then Baxter is liable to Duncan for ¾ of whatever amount was received from the government on the cotton in 1951.

Reversed with directions to transfer to Circuit Court.

ED. F. McFADDIN, Justice (dissenting). I dissent from that portion of the majority opinion which holds that the case should not have been transferred to equity. The rules enunciated throughout our cases are: (a) that if either the relief sought or the defense made is cognizable exclusively in chancery, then the case should be transferred to equity; and also (b) that if the law court cannot afford complete and adequate relief, the cause should be transferred to equity. *Daniel* v. *Garner,* 71 Ark. 484, 76 S. W. 1063; *Dunbar* v. *Bourland,* 88 Ark. 153, 114 S. W. 467; *Smith* v. *Pinnell,* 107 Ark. 185, 154 S. W. 497; and *American Surety Co.* v. *Vann,* 135 Ark. 291, 205 S. W. 646.

Measured by the foregoing rules, I earnestly maintain that this case was properly transferred to equity. The majority opinion says:

". . . no facts are pleaded which support any of these principles of equity. In fact the answer itself shows that none of these doctrines is applicable. The mere allegation of an equitable principle is a conclusion, and when no facts are alleged to support such principle, the allegation is not sufficient to give equity jurisdiction."

As I read the pleadings, the grounds for equity were sufficiently and minutely detailed. The complaint of the plaintiff established a trust, and here is the allegation:

"That by virtue of the agreement entered into by the defendant, John Baxter, the defendant, John Baxter, agreed that he would pay to the plaintiff his *pro rata* share of the proceeds of the government loan which might

be received from said cotton by virtue of its disposal or sale by the United States Government.

"Plaintiff states that the United States Government did dispose of the 477 bales of cotton which was produced by the plaintiff, Paul Duncan, and according to their loan agreement, paid the net proceeds of said sale to the defendant, John Baxter."

The Government loan agreement, referred to in the foregoing quoted section of the complaint, was an exhibit, and has this language in it, signed and agreed to by Baxter as the producer:

"4. The producer agrees that if any tenant or share-cropper has an interest in the cotton, such tenant or share-cropper will be paid his *pro rata* share of the proceeds of the loan and his *pro rata* share of any additional proceeds received from the cotton."

Thus Duncan's case was bottomed on the theory of an express trust growing out of the foregoing and last quoted language. I maintain that Duncan's complaint showed on its face the essential of equity jurisdiction— that is, the enforcement of a trust. Equity has exclusive jurisdiction of trusts. *Spradling* v. *Spradling,* 101 Ark. 451, 142 S. W. 848; *Ferguson* v. *Rogers,* 129 Ark. 197, 195 S. W. 22; *Blanton* v. *First National Bank,* 136 Ark. 441, 206 S. W. 745; and *Simpson* v. *Brooks,* 208 Ark. 1093, 189 S. W. 2d 364.

But when we examine Baxter's answer and motion to transfer to equity, we find *detailed allegations* concerning the necessity of equitable intervention. Baxter had pleaded that Duncan entered into a full and complete settlement with him and released all of his interest in the government loan cotton, so in his answer and cross-complaint and motion to transfer to equity, Baxter made these detailed allegations:

"That if Duncan in the face of his release and relinquishment to Baxter at the time of the mutual termination of their relationship has any claim against Baxter from the proceeds of the ultimate sale of the cotton, the receipt

and release of Duncan executed by Dermott State Bank and Baxter should be cancelled and set aside for mutual mistake, and, Baxter be allowed to assert his claim against Duncan for the balance owing Baxter by Duncan to the extent of $12,865.62, together with interest. That only a Court of Equity can rescind and set aside the mutual agreement voluntarily executed and made between Baxter and Duncan at the termination of the landlord and tenant relationship, and, determine, impress or fix a lien for such unpaid advances to Duncan made by Baxter. That if Baxter is held to account to Duncan for any sums received by Baxter as Trustee for Duncan, his sharecroppers and Baxter, only a Court of Equity can declare the trust, fix the respective interests in said trust funds and impress Baxter's lien to the extent of Baxter's part in such proceeds, if any, for which Baxter is held to account.

"That unless this cause is transferred to the Chancery Court, Baxter has no complete and adequate remedy at law to set aside for mutual mistake his receipt to Duncan which he executed at the termination of their relationship and for an accounting on sums due him by Duncan; for determination of the extent of his liability as a Trustee, if any, to Duncan, his tenants and himself; or, the recovery of $12,865.62 owing Baxter by Duncan and for which sum Baxter would be entitled to have a lien impressed in the nature of an equitable conversion on any money which may be determined Baxter may have received from the United States Government as Trustee and for which he might be held to account to Duncan."

Thus there were detailed allegations of the defenses of (a) recision because of mutual mistake, (b) the necessity of bringing in sharecroppers to have an accounting, and (c) the trust feature of the case. The significant fact is that when the case was transferred to equity, the Court did declare a *trust* in favor of some of the sharecroppers to the extent of $911.58; and that amount of money was paid by Baxter into the Registry of the Chancery Court. This certainly made a case for equity jurisdiction under the authorities previously cited in regard to exclusive equity jurisdiction in the matter of trusts.

In the light of the foregoing, I respectfully dissent from the majority, which has held that this case should not have been transferred to equity.

Justices MILLWEE and WARD join in this dissent.